# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: September 14, 2020

| | |
|---|---|
| * * * * * * * * * * * * * * * | |
| SUSAN HOEFLING, Administrator of the<br>Estate of ASHLEY SCHOOP, | PUBLISHED |
| | No. 18-1935V |
| Petitioner, | |
| v. | Special Master Nora Beth Dorsey |
| SECRETARY OF HEALTH<br>AND HUMAN SERVICES, | Attorneys' Fees and Costs; Reasonable<br>Basis. |
| Respondent. | |
| * * * * * * * * * * * * * * * | |

Renée J. Gentry, Vaccine Injury Clinic, GW Univ. Law School, Washington, DC, for petitioner.
Traci R. Patton, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On December 19, 2018, Susan Hoefling, administrator of the estate of Ashley Schoop, ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2012)[2] alleging that as a result of receiving an influenza ("flu") vaccination administered on December 23, 2017, Ashley Schoop suffered from rhabdomyolysis and opioid addiction that led to her death. Petition at 1-2, 8. On April 29, 2020, the undersigned issued a decision dismissing petitioner's case. Decision dated Apr. 29, 2020 (ECF No. 38). On June 18, 2020, petitioner filed an application

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

for attorneys' fees and costs. Petitioner's Application for Attorneys' Fees and Costs ("Pet. Mot."), filed June 18, 2020 (ECF No. 41).

For the reasons discussed below, the undersigned **GRANTS IN PART** petitioner's motion and awards $29,234.18 in attorneys' fees and costs.

I. BACKGROUND

  A. Procedural History

Petitioner filed her claim on December 12, 2018. Petition. On December 31, 2018, petitioner filed a motion to issue a subpoena for medical records of Ashley Schoop. Mot. to Issue Subpoena, filed Dec. 31, 2018 (ECF No. 7). The Court granted petitioner's motion and petitioner filed medical records on January 7 and 23, 2019. Petitioner's Exhibits ("Pet. Exs.") 1-18. On February 1, 2019, petitioner filed additional medical records. Pet. Exs. 19-20.

Respondent filed a status report in lieu of his Rule 4(c) Report, providing an abbreviated procedural history and factual background, on September 30, 2019. Respondent's ("Resp.") Status Report ("Rept."), filed Sept. 30, 2019 (ECF No. 21). On October 3, 2019 this case was reassigned to the undersigned. Notice of Reassignment dated Oct. 3, 2019(ECF No. 23).

On October 28, 2019, petitioner filed a motion to Substitute Attorney Renée J. Gentry in place of Clifford J. Shoemaker. Mot. to Substitute Attorney, filed Oct. 28, 2019 (ECF No. 26). On November 25, 2019, petitioner filed a notice of appearance of Student-Attorneys from George Washington's Vaccine Injury Litigation Clinic ("GW's Vaccine Clinic"). Entry of Appearance of Student-Attorneys, filed Nov. 25, 2019 (ECF No. 28).

On January 13, 2020, petitioner filed an affidavit confirming petitioner had filed complete medical records. Pet. Ex. 21. On March 19, 2020, respondent filed his Rule 4(c) Report, arguing against compensation. Resp. Rept. at 1 (ECF No. 34).

The undersigned held a Rule 5 status conference on April 16, 2020. See Rule 5 Order dated Apr. 16, 2020 (ECF No. 35). During the conference, the undersigned opined that there was no reasonable basis to continue with this case and encouraged the petitioner to either dismiss the case or file for a Ruling on the Record. Id. at 2.

Subsequently, petitioner filed a motion for a decision dismissing her petition, stating that "[a]n investigation of the supporting facts and science has demonstrated to the [p]etitioner that she will be unable to prove that she is entitled to compensation" and "to proceed further would be unreasonable and would waste the resources of the Court, the respondent, and the Vaccine Program." Pet. Mot. for Decision Dismissing Her Petition, filed Apr. 28, 2020, at ¶¶ 1-2 (ECF No. 37). Respondent did not file a response, and the undersigned issued a decision dismissing petitioner's case on April 29, 2020.

Petitioner filed an application for attorneys' fees and costs on June 18, 2020. Pet. Mot. Petitioner's counsel requested $5,752.10 in fees for GW's Vaccine Clinic, $22,962.00 in fees and $5,208.78 in costs for the Law Firm of Renée J. Gentry, Esq., and $27.30 in costs for petitioner, for a total request of $33,950.18. Id. at 1-2. Respondent filed a response on August 3, 2020, opposing petitioner's motion for fees and costs on the grounds that the claim lacked a reasonable

2

basis.  Respondent's Objection to Petitioner's Application for Attorneys' Fees and Costs ("Resp. Response"), filed Aug. 3, 2020 (ECF No. 42).  Respondent emphasized that petitioner's medical records filed with her petition did not support a finding that petitioner suffered a vaccine-related injury, and thus, petitioner's claim lacked reasonable basis when filed and reasonable basis was never established during the pendency of the claim.  Id. at 15-16.  In her reply dated August 11, 2020, petitioner maintained that her petition possessed reasonable basis.  Pet. Response to Resp. Objection to Attorneys' Fees and Costs ("Pet. Reply"), filed Aug. 11, 2020 (ECF No. 43).

This matter is now ripe for adjudication.

### B.    Abbreviated Factual History[3]

On February 17, 2016, Ms. Schoop received a flu vaccine.  Pet. Ex. 2 at 64-66.  The following day, February 18, 2016, Ms. Schoop presented to the Anne Arundel Medical Center ("AAMC") emergency department, reporting weakness in her legs that began the previous evening.  Pet. Ex. 3 at 24-25.  Ms. Schoop reported "needles sensation of her feet bilaterally," but she noted that the pain did not come up further than her calves.  Id. at 73.

A neurology consult took place on February 18, 2016 with Dr. Kenneth Gummerson.  Pet. Ex. 3 at 36-40.  Dr. Gummerson noted that Ms. Schoop complained of bilateral lower extremity numbness and pain, difficulty walking, cold feet, and paresthesias in her feet.  Id. at 37.  Ms. Schoop reported that she frequently had cold feet and had a history of fibromyalgia.  Id.  She did not have appreciable weakness and her reflexes were normal to hyperreflexic.  Id. at 39.  The neurologist believed it was unlikely Ms. Schoop had Guillain-Barré syndrome ("GBS").  Id. at 54.

On February 22, 2016, while she was still in the hospital, Dr. Mitesh Trambadia diagnosed petitioner with rhabdomyolysis[4] of unclear etiology, and questioned whether it was caused by the flu vaccine - "?meds, flu vaccine."  Pet. Ex. 3 at 60.

Ms. Schoop was discharged from AAMC on February 24, 2016.  Pet. Ex. 3 at 32-34.  She was diagnosed with rhabdomyolysis of unclear etiology.  Id. at 60.  On February 23, 2016, it was noted that Ms. Schoop had "[a]cute rhabdomyolysis likely secondary to Adderall use- improving slowly."  Id. at 63.  At discharge, she was advised to stop taking her Adderall.  Id. at 32.

On February 28, 2016, Ms. Schoop presented to Dr. Sha-Nita Brennan at Kaiser Permanente for follow-up appointment.  Pet. Ex. 2 at 303.  At the appointment, Dr. Brennan noted, "[p]atient discharge [f]rom hospital 2/24/2016 for rhabdo, presumably secondary to flu shot."  Pet. Ex. 2 at 303.

---

[3] Although the undersigned has reviewed all of the medical records and other evidence in this case, for purposes of efficiency, this history is largely taken from respondent's Rule 4(c) Report.  For a more detailed factual history, see Resp. Rept. at 1-17.

[4] Rhabdomyolysis is the disintegration or dissolution of muscle.  Dorland's Medical Dictionary Online, https://www.dorlandsonline.com/dorland/definition?id=43665&searchterm=rhabdomyolysis (last accessed Sept. 11, 2020).

On March 1, 2016, Ms. Schoop presented at Kaiser Permanente for a hospital follow-up. Pet. Ex. 2 at 77-83. She was assessed with rhabdomyolysis and hypothyroidism and prescribed oxycodone, carisoprodol, and anti-nausea medication. Id. at 80-81. She was also given a one-time morphine injection for pain. Id. at 81.

On November 30, 2016, Ms. Schoop presented to Kaiser Permanente for medication refill. Pet. Ex. 2 at 190-94. It was noted that Ms. Schoop was having bilateral foot pain since a flu shot last year, which was followed by rhabdomyolysis. Id. at 190.

On February 8, 2017, Ms. Schoop was found unresponsive by her husband. Pet. Ex. 16 at 6. An ambulance was called, but they were unable to revive her. Pet. Ex. 20 at 1. Cause of death was determined to be acute loperamide[5] toxicity due to an accidental overdose. Pet. Ex. 5.

## II.  PARTIES' CONTENTIONS

### A.  Petitioner's Contentions

Petitioner asserted that her petition possessed reasonable basis and thus, she argued that she is entitled to reasonable attorneys' fees and costs for several reasons. Pet. Reply at 1-3.

First, petitioner contends the length of time the case was pending due in part to Ms. Schoop's death and the subsequent challenges in obtaining medical records. Pet. Reply at 2. Petitioner, Ms. Schoop's mother, acted in good faith and made every effort to identify all prior treating doctors for her daughter, but was unfortunately unable to get all of the records prior to filing the petition. Id. As the undersigned noted in her Rule 5 Order, without prior medical records it was impossible to determine a baseline that might allow petitioner to demonstrate causation. See Rule 5 Order at 1.

Second, petitioner stated that her counsel conducted research, finding several medical journal articles which suggested an association between rhabdomyolysis and the flu vaccination. Pet. Reply at 2. Counsel also consulted with an expert who gave a preliminary opinion as the reasonableness of the claim. Id.

Petitioner concluded that upon the undersigned's Rule 5 Order, petitioner authorized counsel to immediately conclude the matter. Pet. Reply at 3. In summary, petitioner argues that she submitted objective evidence of reasonable basis, even if she was unable to ultimately provide persuasive evidence of causation, and thus, she should be awarded reasonable fees and costs. Id.

### B.  Respondent's Contentions

Respondent argued that petitioner is not entitled to attorneys' fees and costs because there was nothing in the medical record to support petitioner's allegation that the flu vaccine caused

---

[5] Loperamide is a medication used to treat diarrhea. See Loperamide, Drugs.com, https://www.drugs.com/mtm/ loperamide.html (last accessed Sept. 11, 2020). Of note, Ms. Schoop had a history of irritable bowel syndrome. See, e.g., Pet. Ex. 2 at 38.

4

her to suffer a severe opioid addiction that resulted in her death. Resp. Response at 15-16. Respondent argued that, to the contrary, Ms. Schoop's medical records indicated she had a long-standing problem with narcotic medication that began before the February 2016 flu vaccination. Id. at 16. Furthermore, respondent emphasized that while some physicians during Ms. Schoop's hospitalization initially questioned whether her rhabdomyolysis was related to the flu vaccine based on the temporal relationship, her diagnosis was ultimately, "[a]cute rhabdomyolysis likely secondary to Adderall use." Id.; see also Pet. Ex. 3 at 32.

Therefore, respondent concluded, there was no objective evidence in the submitted records to support a claim for compensation for either a Table injury or an off-Table injury. Resp. Response at 16.

### III.   DISCUSSION

#### A.   Reasonable Basis

Under the Vaccine Act, a special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. § 15(e)(1). When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. Here, respondent does not challenge petitioner's good faith; instead, respondent asserts that petitioner's claim had no reasonable basis.

"Special masters have broad discretion in awarding attorneys' fees where no compensation is awarded on the petition." Silva v. Sec'y of Health & Hum. Servs., 108 Fed. Cl. 401, 405 (2012). In the interest of preserving this discretion, courts have declined to impose "a reasonable basis test that turns solely on evidentiary standards." Chuisano v. Sec'y of Health & Hum. Servs., 116 Fed. Cl. 276, 287 (2014). Instead, it has been described simply as "an objective inquiry unrelated to counsel's conduct." Simmons v. Sec'y of Health & Hum. Servs., 875 F.3d 632, 636 (Fed. Cir. 2017). While incomplete medical records do not prohibit a finding of reasonable basis, Chuisano, 116 Fed. Cl. at 288, the Vaccine Act contemplates "a simple review of available medical records to satisfy the attorneys that the claim is "feasible" prior to filing. Silva, 108 Fed. Cl. at 405. However, "[a] claim can lose its reasonable basis as the case progresses." R.K. v. Sec'y of Health & Hum. Servs., 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing Perreira v. Sec'y of Health & Hum. Servs., 33 F.3d 1375, 1376-77 (Fed. Cir. 1994)).

The Federal Circuit clarified that the "failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion" on behalf of the special master. Cottingham ex. rel. K.C. v. Sec'y of Health & Hum. Servs., No. 2019-1596, 2020 WL 4810095, at *5 (Fed. Cir. Aug. 19, 2020). In Cottingham, the Court concluded that the special master's determination that the parent was not entitled to an attorney fees award based on finding no evidence of causation could present an abuse of discretion. Id. The petitioner filed an affidavit, a package insert identifying vaccine adverse reactions including dizziness, headaches, vomiting, and syncope, and objective medical evidence, including seven medical-examination reports showing that the child suffered the same adverse reactions after receiving the vaccine. Id. at *5-6. Thus, the question was whether there was objective evidence that established

5

reasonable basis. The Court held that it was appropriate for the special master to make a factual determination as to the weight afforded the evidence and whether it established reasonable basis.

Here the undersigned finds petitioner's claim had a reasonable basis when it was filed for two reasons. First, there was a temporal association between vaccination and Ms. Schoop's diagnosis of rhabdomyolysis. Ms. Schoop received her flu vaccine on February 17, 2016. The following day she presented with extremity pain and difficulty walking. She was then diagnosed with rhabdomyolysis. This timeline shows a temporal association between vaccination and onset of illness.

Second, Ms. Schoop's medical records contained evidence that her rhabdomyolysis could have been vaccine-related. Specifically, the records state as follows, on February 22, 2016, Dr. Trambadia diagnosed petitioner with rhabdomyolysis of unclear etiology, "?meds, flu vaccine." Pet. Ex. 3 at 60. On February 28, 2016, Dr. Brennan noted, "[p]atient discharge [f]rom hospital 2/24/2016 for rhabdo, presumably secondary to flu shot." Pet. Ex. 2 at 303. Thus, there is medical record evidence that Ms. Schoop's treating physicians causally associated her rhabdomyolysis with her vaccination.

Objective medical evidence, including medical records, can constitute evidence of causation supporting a reasonable basis. See Cottingham, 2020 WL 4810095, at *6 (citing Harding v. Sec'y of Health & Hum. Servs., 146 Fed. Cl. 381, 403 (Fed. Cl. 2019)). Medical records can support causation even where the records provide only circumstantial evidence of causation. Id.

Petitioner also argued that she conducted independent research and consulted an expert. While the expert did not file a report during the pendency of the case, she did cite medical literature in support of her position that the case had a reasonable basis. Pet. Reply at 2 n.1.

Therefore, the objective evidence shows petitioner had reasonable basis to file her petition. Once it became apparent that her claim could not be supported by an expert, petitioner promptly moved to dismiss her case. The undersigned finds petitioner's motion to dismiss was both appropriate and timely. Because the undersigned finds that petitioner's claim had reasonable basis, she will award reasonable attorneys' fees and costs.

### B. Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorney's fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the

name of the person performing the service.  See Savin v. Sec'y of Health & Hum. Servs., 85 Fed. Cl. 313, 316-18 (2008).  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."  Id. at 1522.  Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond.  See Sabella v. Sec'y of Health & Hum. Servs., 86 Fed. Cl. 201, 209 (2009).  A special master need not engaged in a line-by-line analysis of petitioner's fee application when reducing fees.  Broekelschen v. Sec'y of Health & Hum. Servs., 102 Fed. Cl. 719, 729 (2011).

Here, petitioner requests the following hourly rates for the work of her attorneys: for the student attorney, Ms. Meredith Davidson, $145.00 per hour for work performed in 2019-2020; for Mr. Clifford Shoemaker, $430.00 per hour for work performed in 2016, $440.00 per hour for work performed in 2017, $450.00 per hour for work performed in 2018, and $460.00 for work performed in 2019; and for Ms. Renée Gentry $445.00 for work performed in 2019, and $464.00 for work performed in 2020.  Petitioner also requests paralegal rate of $150.00 per hour for work performed in 2019.

The undersigned finds the requested rates for Mr. Shoemaker reasonable and in accordance with what this attorney has previously been awarded for his Vaccine Program work.  See, e.g., Jones v. Sec'y of Health & Hum. Servs., No. 15-1239V, 2019 WL 7496602, at *2 (Fed. Cl. Spec. Mstr. Sept. 20, 2019); Price v. Sec'y of Health & Hum. Servs., No. 11-442V, 2019 WL 1796100, at *2 (Fed. Cl. Spec. Mstr. Mar. 22, 2019).  The rates requested by Ms. Gentry for 2019 and 2020 are similarly reasonable and in accordance with what this attorney has previously been awarded for his Vaccine Program work.  See, e.g., Irwin v. Sec'y of Health & Hum. Servs., No. 16-1454V, 2020 WL 2510421, at *3 (Fed. Cl. Spec. Mstr. Apr. 9, 2020); Mohamed v. Sec'y of Health & Hum. Servs., No. 18-1409V, 2020 WL 4811529, at *1 (Fed. Cl. Spec. Mstr. July 17, 2020)

As for the student attorney, the undersigned has awarded similar rates in the past.  See, e.g., Barker v. Sec'y of Health & Hum. Servs., No. 16-1554V, 2019 WL 4648912, at *5 (Fed. Cl. Spec. Mstr. Aug. 27, 2019); Parker v. Sec'y of Health & Hum. Servs., No. 02-1553V, 2018 U.S. Claims LEXIS 833 (Fed. Cl. Spec. Mstr. June 19, 2018).  Accordingly, the undersigned finds the requested rates are reasonable and will therefore award them in full.  Finally, the undersigned finds petitioner's request that work performed by paralegals be compensated at a rate of $150.00 per hour for work performed in 2019 is generally reasonable and consistent with what other special masters have awarded Mr. Shoemaker and Ms. Gentry in the other cases over the years.  See, e.g., Irwin, 2020 WL 2510421, at *3.

While petitioner is entitled to an award of attorneys' fees and costs, the undersigned finds that a reduction in the number of hours billed by petitioner's counsel and paralegal at the Renée Gentry Law Firm is appropriate.  For reasons explored more thoroughly below, the undersigned reduces the requested fees by 20%, resulting in deduction of $4,592.40.

7

The undersigned has previously reduced attorneys' fees in cases handled by Mr. Shoemaker and his associates for excessive interoffice communication. See Maciel v. Sec'y of Health & Hum. Servs., No. 15-362V, 2019 WL 6249369, at *3 (Fed. Cl. Spec. Mstr. Oct. 17, 2019); Oliver v. Sec'y of Health & Hum. Servs., No. 10-394V, 2019 WL 2246727, at *3 (Fed. Cl. Spec. Mstr. Apr. 16, 2019). Here, Mr. Shoemaker and the paralegal billed a number of entries with descriptions such as "Emails to Gretchen about records," "Email from Sabrina about records," and "Emails to and from Susan." See generally Pet. Mot. at 13-22. The undersigned finds the majority of the interoffice communication entries unreasonable and excessive.[6] As in the past, this will lead to a reduction in petitioner's fee award.

In regard to GW's Vaccine Clinic, the undersigned determines that the hours billed are reasonable. The billing entries accurately reflect that nature of the work performed. Therefore, the undersigned will award the fees requested.

### C. Reasonable Costs

#### 1. Expert fees

Petitioner requests $4,200.00 for work performed by Dr. Carlo Tornatore, which was a total of 10.5 hours, billed at an hourly rate of $400.00. Pet. Mot. at 58. Dr. Tornatore is a well-qualified physician who is experienced in the Vaccine Program. Therefore, the undersigned finds that both the number of hours Dr. Tornatore spent on the case and his hourly rate are reasonable. See Maciel, 2019 WL 6249369, at *4; Cipa v. Sec'y of Health & Hum. Servs., No. 16-462V, 2019 WL 2744851, at *4 (Fed. Cl. Spec. Mstr. June 6, 2019); L.A. v. Sec'y of Health & Hum. Servs., No. 12-629V, 2016 WL 1104860, at *6 (Fed. Cl. Spec. Mstr. Feb. 29, 2016). Petitioner is therefore awarded $4,200.00 for expert fees.

#### 2. Miscellaneous Costs

Petitioner requests $27.30 for personal litigation expenses related to postage. Pet. Mot. at 11-12. Because these costs are reasonable and well-documented, the undersigned will reimburse them in full.

Petitioner also requests $1,008.78 for miscellaneous costs, including the filing fee and medical records. See Pet. Mot. at 1, 23-25. However, the receipts and documentation provided

---

[6] The following dates and entries are examples of some of the entries which form the basis of the fees reduction: September 2, 2016, "Email from Gretchen re packet sent"; September 22, 2016, "Email from Gretchen; discuss recs with her"; February 6 & 7, 2017, "Review and approve prepay"; June 22, 2017, "Email to Susan to call"; March 1, 2018, "Email to Gretchen about recs"; May 9, 2018, "Email from Gretchen about status of her work on case"; June 25, 2018, "Email from Gretchen; discuss status of medical records with her"; August 20, 2018, "Email from Gretchen about what she has done in the case re recs"; November 7, 2018, "Email from Susan confirming time to talk tomorrow"; December 29, 2018, "Emails from and to Susan"; January 15, 2019, "Emails from and to Sabrina re photos"; and April 24, 2019, "Email Sabrina about Friday's deadline."

8

show costs in the amount of $885.18.  Therefore, the reduction in costs for the Law Offices of Renée J. Gentry is $123.60.  The undersigned awards costs of $885.18.

## IV.     CONCLUSION

Based on all of the above, the undersigned finds that it is reasonable to compensate petitioner and his counsel as follows:

**Attorneys' Fees – GW Law School Vaccine Injury Litigation Clinic**

| | |
|---|---|
| Requested Attorneys' Fees: | $ 5,752.10 |
| Awarded Attorneys' Fees: | $ 5,752.10 |

**Attorneys' Fees – The Law Offices of Renée J. Gentry**

| | |
|---|---|
| Requested Attorneys' Fees: | $ 22,962.00 |
| Reduction of Attorneys' Fees: | - ($ 4,592.40) |
| Awarded Attorneys' Fees: | $ 18,369.60 |

**Costs – The Law Offices of Renée J. Gentry**

| | |
|---|---|
| Requested Attorneys' Costs: | $ 5,208.78 |
| Reduction of Attorneys' Costs: | -($ 123.60) |
| Awarded Attorneys' Costs: | $ 5,085.18 |

**Costs – Petitioner**

| | |
|---|---|
| Requested Litigation Costs: | $ 27.30 |
| Awarded Litigation Costs: | $ 27.30 |
| **Total Attorneys' Fees and Costs:** | **$ 29,234.18** |

**Accordingly, the undersigned awards:**

**(1) A lump sum in the amount of $27.30, representing reimbursement for reasonable attorneys' fees and costs, in the form of a check payable to petitioner.**

**(2) A lump sum in the amount of $5,752.10, representing reimbursement for reasonable attorneys' fees and costs, in the form of a check payable jointly to petitioner and the George Washington Law School Vaccine Injury Litigation Clinic.**

**(3) A lump sum in the amount of $23,454.78, representing reimbursement for reasonable attorneys' fees and costs, in the form of a check payable jointly to petitioner, and petitioner's former firm, The Law Offices of Renée J. Gentry.**

The Clerk of Court shall enter judgment in accordance herewith.[7]

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.